IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02703-KLM

TODD WEITZMAN,

    Plaintiff,

v.

JOSHUA MCFERRIN, L.P.N., in his individual capacity,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant Joshua McFerrin's ("McFerrin") **Motion to Dismiss Amended Complaint [ECF 30] [#67]**[1] (the "Motion"). Plaintiff filed a Response [#69] in opposition to the Motion, and Defendant McFerrin filed a Reply [#74]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#67] is **DENIED**.[2]

**I. Background**

Plaintiff initiated this lawsuit pursuant to 42 U.S.C. § 1983 on November 13, 2017. *Compl.* [#1]. Plaintiff filed an Amended Complaint and Jury Demand [#30] (the "Amended Complaint") on March 22, 2018, which is the operative pleading in this case. Plaintiff's

---

[1] "[#67]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#33].

claims arise from his pretrial detainment at the Van Cise-Simonet Detention Center ("VCSDC") between September of 2015 and December 12, 2015. *Am. Compl.* [#30] ¶¶ 21-51. Plaintiff generally alleges that medical staff at VCSDC failed to address his complaints of a skin rash and vision loss which turned out to be symptoms of ocular syphilis with which Plaintiff was diagnosed after his release. *See generally id.* Plaintiff brought his claims against The City and County of Denver, Denver Health and Hospitality Authority ("Denver Health"), and individual employees of Denver Health including Defendant McFerrin, a nurse. *See generally id.* All Defendants except Defendant McFerrin were dismissed from this lawsuit on March 31, 2019. *Order* [#66]. Accordingly, only factual allegations in the Amended Complaint [#30] that are directed against Defendant McFerrin are considered in this Order.

Plaintiff alleges the following facts as the basis for his claim.[3] In September 2015, Plaintiff was arrested and charged with a misdemeanor. *Am. Compl.* [#30] ¶ 21. While awaiting disposition of his case, Plaintiff was booked into VCSDC. *Id.* During his initial intake interview with VCSDC medical staff, Plaintiff disclosed his known medical issues but did not indicate any problems with his eyes. *Id.* ¶ 24. Shortly after being admitted at VCSDC, Plaintiff began experiencing medical and psychological issues. *Id.* ¶ 25. Plaintiff was directed to submit a written notice, known as a "kite," to advise medical staff of these issues. *Id.* Plaintiff began sending many kites to the medical staff for his various medical issues which included difficulties getting medication, pain for preexisting conditions like ulcerative colitis, back and foot pain, and night terrors. *Id.* ¶ 26. Approximately two months into his detention, Plaintiff was moved into a segregated housing unit for his own protection

---

[3] All well-pled facts from the Amended Complaint [#30] are accepted as true and viewed in the light most favorable to Plaintiff. See *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

and because his night terrors had been disturbing other inmates. *Id.* ¶ 27. Plaintiff states that, after the move, he continued to have issues getting his medication in a timely manner and in the correct doses. *Id.* ¶ 28. Because Plaintiff's kites failed to resolve these issues, Plaintiff filed a grievance against one of the nurses at VCSDC. *Id.* ¶¶ 28-29. Plaintiff alleges that, after this grievance was filed, a pattern began where many of his requests for medical attention were "flatly ignored or brushed off," and his attempts to schedule a doctor's appointment became very difficult. *Id.* ¶ 29.

Plaintiff sent his fourth and final kite on December 9, 2015, in which he indicated that he was almost completely blind in his right eye and that he was beginning to lose his vision in his left eye. *Id.* ¶ 46. Plaintiff alleges that, despite the issues raised in his kite, Defendant McFerrin wrote the following in his assessment: "[inmate] walking around pod in no apparent distress. Not favoring one eye over the other." *Id.* ¶ 47. Plaintiff further alleges that Defendant McFerrin's assessment stated that "[inmate] states no complaints when asked" which, according to Plaintiff, was false given that Plaintiff "was panicked about his rapidly deteriorating eyesight and Denver Health's apparent unwillingness to do anything about it." *Id.* ¶ 47. Additionally, Plaintiff avers that Defendant McFerrin reiterated the fact that Plaintiff had a doctor's appointment on December 21, 2015, nine days after his scheduled release date. *Id.* ¶ 48. According to Plaintiff, in Defendant McFerrin's written assessment, he falsely reported that Plaintiff stated this date was "fine." *Id.*

On December 12, 2015, Plaintiff was released from VCSDC. *Id.* ¶ 51. Soon after his release, Plaintiff's personal doctor referred him to a specialist at the Denver Retina Center who immediately diagnosed Plaintiff with ocular syphilis. *Id.* ¶¶ 52-53. Plaintiff's diagnosis was confirmed and he was admitted to Rose Medical Center for two weeks of aggressive antibiotic treatment. *Id.* ¶ 54. Although the antibiotic treatment stopped the

progress of the infection and the deterioration of Plaintiff's eyesight, he states that his previous vision loss could not be reversed. *Id.* ¶ 55. Ultimately, Plaintiff was diagnosed with three conditions, all of which were caused by the ocular syphilis: (1) pseudopapilledema of the optic disc of his right eye; (2) toxic maculopathy in his right eye; and (3) lattice degeneration of the retina in his left eye. *Id.* ¶ 56.

Plaintiff alleges that he has lost 70% of the vision in his right eye and that his pre-existing nearsightedness has gotten worse because of VCSDC's medical staff and Defendant McFerrin's deliberate indifference to his serious medical needs. *Id.* ¶ 57. Plaintiff believes that, if he had been allowed to see a specialist in a timely manner, his eyesight could have been saved. *Id.* ¶ 58. Plaintiff further states that, because of this incident, he continues to require intensive medical treatment, his ability to work has been limited, and that he suffers from deep depression. *Id.* ¶¶ 59-61.

Plaintiff asserts that Defendant McFerrin, in his individual capacity, violated Plaintiff's Fourteenth Amendment right to be free from deliberate indifference to his known serious medical needs. *Id.* ¶¶ 73, 77. The instant Motion [#67] seeks to dismiss Plaintiff's claim against Defendant McFerrin pursuant to Rule 12(b)(6).

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be

granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting Twombly, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III. Analysis

Plaintiff generally asserts that "Defendant knew or should have known that deliberately disregarding Plaintiff's repeated, unambiguous assertions that he was losing

his vision posed a substantial risk of serious harm to Plaintiff's safety; yet Defendant[ ] deliberately disregarded that obvious, substantial risk, and failed to take reasonable measures to protect Plaintiff from that risk." *Am. Compl.* [#30] ¶ 74. Defendant McFerrin argues that: (1) Plaintiff fails to adequately allege a plausible claim for deliberate indifference arising from Defendant McFerrin's response to Plaintiff's December 9, 2015 kite; and (2) Defendant McFerrin is entitled to qualified immunity on Plaintiff's Fourteenth Amendment deliberate indifference claim. *Motion* [#67] at 6-7.

### A.     Constitutional Violation

The Tenth Circuit has stated that a pretrial detainee's Fourteenth Amendment deliberate indifference claim of inadequate medical care should be evaluated pursuant to the standards set by the United States Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976), which concerned a convicted prisoner's Eighth Amendment deliberate indifference claim. *Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013) (stating that pretrial detainees are owed "at least the same standard of care prison officials owe convicted inmates"); *see Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018) ("Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment. In determining whether [a pretrial detainee's] rights were violated, however, we apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983." (quoting *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999))). Because detainees "must rely on prison authorities to treat [their] medical needs," the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 103-04 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The test for deliberate indifference is both objective and subjective, in that a detainee must establish

that: (1) he was deprived of a medical need that is, objectively, "sufficiently serious," and (2) that the defendant subjectively knew of and disregarded "an excessive risk to [the detainee's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).[4]

### 1. Objective Prong: Sufficiently Serious Condition

With respect to the objective prong, the Court considers whether Plaintiff's harm suffered "rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause" of the Eighth Amendment. *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005). A medical need is "sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 751 (citation and internal quotation marks omitted). Plaintiff alleges that he was ultimately diagnosed with ocular syphilis which caused him to lose 70% of the vision in his right eye. *Am. Compl.* [#30] at 53, 56, 57. Defendant McFerrin does not contest that the objective element has been met, and the Court finds that Plaintiff has alleged a sufficiently serious medical condition for the purposes of his medical indifference claim. *Motion* [#67] at 8.

### 2. Subjective Prong: Knowledge and Disregard of Excessive Risk

The subjective component of the deliberate indifference test "requires a plaintiff to demonstrate that officials acted with a 'sufficiently culpable state of mind.'" *Vega v. Davis*,

---

[4] As noted in the Court's March 31, 2019 Order [#66], the Tenth Circuit Court of Appeals, in a recent, unpublished opinion, has noted that circuit courts "are split on whether [*Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015),] alters the standard for conditions of confinement and inadequate medical care claims brought by pretrial detainees," with the Second, Seventh, and Ninth Circuits saying it has done so and with the Fifth, Eighth, and Eleventh Circuits saying it has not done so and that *Kingsley* applies only to excessive force claims. *Estate of Vallina v. Cty. of Teller Sheriff's Office*, 757 F. App'x 643, 647 (10th Cir. 2018). The Tenth Circuit has not yet directly determined this issue. *See id.* Given that the Tenth Circuit's last published statement on the appropriate test indicates that the standard has not changed at this time, *see Perry*, 892 F.3d at 1121, the Court proceeds on the basis that the Fourteenth and Eighth Amendment standards are identical for purposes of Plaintiff's claims. *See Estate of Vallina*, 757 F. App'x at 647.

673 F. App'x 885, 890 (10th Cir. 2016) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "[A] prison official cannot be liable unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (internal quotation marks omitted). Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith," that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Additionally, a medical professional can be liable under the deliberate indifference standard if he "knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, it stands to reason that he may also be liable for deliberate indifference from denying access to medical care." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). In order to "establish gatekeeper liability, a plaintiff must still allege that the need for medical care was obvious to the prison official." *Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1227 (D. Colo. 2016). The obviousness of the circumstances can arise when "a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral." *Self*, 439 F.3d at 1232.

Here, Defendant McFerrin argues that Plaintiff's allegations fail to satisfy the subjective component because there are no allegations that Defendant McFerrin "actually knew or even suspected that Plaintiff had syphilis or ocular syphilis, or any other condition requiring more immediate treatment than was provided." *Motion* [#67] at 9. Defendant

McFerrin further asserts that "Plaintiff does not allege what, if anything, he told [Defendant] McFerrin about his complaints and symptoms, and alleges no facts suggesting [Defendant] McFerrin's notes were deliberately false or were anything more than, at most, a misassessment or misdiagnosis of his condition." *Id.* at 11. Defendant McFerrin contends he "carried out his gatekeeper role, informing Plaintiff of his upcoming medical follow-up on December 21, 2015 and securing Plaintiff's agreement that this proposed treatment schedule was 'fine.'" *Motion* [#67] at 10.

Plaintiff's sparse allegations against Defendant McFerrin solely concern his response to Plaintiff's December 9, 2015 kite for medical attention. *See Am. Compl.* [#30] ¶¶ 46-48. In the kite, Plaintiff indicated that "he was almost completely blind in his right eye, and that the vision loss was starting in his left." *Id.* ¶ 46. Plaintiff contends that Defendant McFerrin was "<u>the</u> medical provider who responded to [the December 9, 2015] kite, and yet lied about the seriousness of [Plaintiff's] medical needs . . . failing to order either testing or treatment for Plaintiff (or referring him to another medical provider)." *Response* [#69] at 7-8 (emphasis in original). Plaintiff alleges that Defendant McFerrin's December 9, 2015 assessment "that [Plaintiff] states no complaints when asked" was simply not true. *Am. Compl.* [#30] ¶ 47. Plaintiff asserts that Defendant McFerrin "falsely report[ed] that [Plaintiff] was doing fine and . . . did absolutely nothing to medically assist [Plaintiff]." *Response* [#69] at 7 (internal citation omitted). Plaintiff asserts he was "[d]esperate to find another avenue by which to be seen by someone who would take his condition seriously." *Am. Compl.* [#30] ¶ 49.

In addressing these arguments, the Court considers the specific facts and circumstances surrounding Plaintiff's claim against Defendant McFerrin and whether Plaintiff has sufficiently alleged the subjective component of the deliberate indifference test

in order to state a plausible deliberate indifference claim. Additionally, the Court has reviewed the cases cited by Defendant McFerrin, and does not find them persuasive.

In *Williams v. Allred*, 611 F. App'x 491 (10th Cir. 2015), the plaintiff, a pro se federal prisoner, alleged fabricated medical reports relating to his scalp condition. The court found that the plaintiff's allegations were insufficient to state a plausible claim. The plaintiff attached documents to the complaint, but did not specify which documents supported his arguments, and the court held the doctor's decision to examine the plaintiff prior to prescribing medication demonstrated due diligence. *Id.* at 494-95. The doctor monitored the plaintiff's scalp condition and noted that it was "'resolved,' suggesting improvement." *Id.* at 495. While Defendant McFerrin was also accused of falsifying a report, unlike the medical provider in *Williams*, he did not physically examine Plaintiff's eye, but rather observed Plaintiff walking around the pod. Defendant McFerrin's arms-length observations do not rise to the same level of due diligence as demonstrated in *Williams*.

In *Robles v. Aransas City Sheriff's Department*, No. 2:15-CV-495, 2016 WL 4159752, at *7 (S.D. Tex. Aug. 5, 2016), the plaintiff alleged that because the defendant was not present during and had no personal knowledge of the incident, his written report falsely described the events that occurred. The court found that the plaintiff "fail[ed] to describe any facts to support his assertion . . . and makes only the conclusory allegation that [the defendant] generated a false report." *Id.* Upon reviewing the defendant's report, the court found that the defendant recorded witness statements and did not offer any direct observations of the incident. *Id.* Unlike the plaintiff in *Robles*, Plaintiff here alleges specific statements made in Defendant McFerrin's report to be false and refutes each statement. Defendant McFerrin's report was not a collection of witness statements, but rather a first-hand account of what he allegedly saw and heard. Since Defendant McFerrin's report was

based on first-hand experience and Plaintiff refuted specific alleged false statements, the Court does not find *Robles* persuasive.

In *Randolph v. Glanz*, No. 00-CV-0154-CVE-TLW, 2016 WL 4992467, at *4 (N.D. Okla. Sept. 16, 2016), the plaintiff alleged deliberate indifference based on a delay in seeing both a doctor and a medical specialist. The court found the plaintiff's allegations did not support the conclusion that it was obvious a doctor should have been consulted. Both the nurse and the doctor gave the plaintiff eye drops to address the plaintiff's symptoms and no one on the medical staff recognized the plaintiff's condition as being beyond their ability to treat. Here, Defendant McFerrin did not provide Plaintiff with anything to help his deteriorating vison and recognized that Plaintiff should see a specialist, but decided to wait a week before contacting the ophthalmologist. *Am. Compl.* [#30] ¶¶ 39-40.

In perhaps the most comparable case, *Frey v. Reams*, No. 17-cv-00669-LTB-MJW, 2018 WL 582400, at *2 (D. Colo. Jan. 29, 2018), the plaintiff alleged deliberate indifference after permanently losing vision in his right eye. While the court found that the treatment could have been unreasonable or even negligent, the plaintiff did not show deliberate indifference against any particular named defendant. *Id.* at *4. The plaintiff made serious allegations against largely unnamed jail staff members, but none of those allegations implicated anything the named defendants did or failed to do. *Id.* Contrary to *Frey*, Plaintiff here makes serious allegations and directly associates them with Defendant McFerrin.

"'[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth

Amendment.'" *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997) (quoting *Estelle*, 429 U.S. at 106). Plaintiff is not asserting that Defendant McFerrin was negligent in diagnosing his medical condition or assessing that he had ocular syphilis. Plaintiff generally avers that "Defendant [ ] McFerrin knew [Plaintiff] was experiencing an obviously serious and potentially emergent near total loss of vision, but failed to take any action to provide or otherwise procure medical treatment for him." *Response* [#69] at 7. Plaintiff alleges that Defendant McFerrin knew of facts from which the inference could be drawn that a substantial risk of serious harm related to escalating blindness might exist. *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) ("Delays that courts have found to violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems."). Furthermore, Plaintiff alleges Defendant McFerrin was aware that a follow-up appointment was scheduled for December 21, 2015, and Plaintiff "left no doubt that he needed to receive immediate medial attention and treatment through any avenue possible[.] But Defendant McFerrin responded to his knowledge that [Plaintiff] faced a substantial risk of serious harm just by falsely reporting that [Plaintiff] was doing fine and had no complaints." *Response* [#69] at 7 (internal citation omitted).

Plaintiff alleges that the appointment date was not "fine" and that he repeatedly tried to inform the medical staff that he was supposed to be released before that date. *Id.*; *Self*, 439 F.3d at 1232 (recognizing that a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition may constitute deliberate indifference). The allegations support an inference that Defendant McFerrin knew about Plaintiff's near blindness, yet falsely

reported that Plaintiff "was fine" with his scheduled December 21, 2015 medical appointment, thus preventing Plaintiff from obtaining medical attention in a timely manner. *Am. Compl.* [#30] ¶ 48; *Self*, 439 F.3d at 1232 (stating that prison health officials who serve as the gatekeeper for other medical personnel capable of treating the condition may be held liable under the deliberate inference standard if they delay or refuse to fulfill gatekeeper role). Viewing the allegations and drawing reasonable inferences in the light most favorable to Plaintiff, the Amended Complaint [#30] can be read to allege that Defendant McFerrin knew of Plaintiff's serious medical condition, and despite his knowledge, failed to ensure that he received prompt treatment. Knowledge of Plaintiff's condition, coupled with the alleged false reporting that Plaintiff "was fine" with the December 21, 2015 medical appointment, may give rise to an inference that Defendant McFerrin acted with deliberate indifference, thus satisfying the subjective prong of the test. *Martinez v. Garden*, 430 F.3d 1302, 1305 (10th Cir. 2005).

B.  **Qualified Immunity**

As stated above, Defendant McFerrin also contends that he is entitled to qualified immunity on Plaintiff's Fourteenth Amendment deliberate indifference claim. *Motion* [#67] at 7. The doctrine of qualified immunity "shields government officials performing discretionary functions from liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Certain government officials may be exempt from liability when sued in their individual capacities, as a result of qualified immunity. *See Harlow*, 457 U.S. at 814-18. The Court's analysis of qualified immunity in the context of a Rule 12(b)(6)

motion involves two inquiries. The Court must determine whether the alleged facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court must also consider whether the plaintiff has shown that "the constitutional right was clearly established at the time of the alleged unlawful activity." *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Courts may exercise discretion regarding which of the two prongs to address first, as the failure of a single prong will trigger qualified immunity. *Pearson*, 555 U.S. at 231. Since the Court has already determined that Plaintiff has sufficiently alleged a constitutional violation in Section III.A., the Court need only address the "clearly established" prong here.

The question of whether the constitutional right was clearly established must be asked in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2012). In order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right. *Medina v. City & Cty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992) (*overruled on other grounds by Morris v. Noe*, 672 F.3d 1185, 1197 n.5 (10th Cir. 2012)). In other words, there must be case law in which a constitutional violation was found based on similar conduct. *See Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999). "The precedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (internal quotations omitted). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that

what he is doing violates that right.'" *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). Although a plaintiff could prevail against a qualified immunity defense without a favorable case directly on point, "existing precedent must have placed the statutory or constitutional questions 'beyond debate.'" *Id.* (quoting *Mullenix*, 136 S. Ct. at 308).

Defendants argue that there is no clearly established law regarding a failure to accurately assess and treat complaints of decreased vision. *Motion* [#67] at 13. Accordingly, the burden shifts to Plaintiff to identify Tenth Circuit precedent or the clearly established weight of cases from other jurisdictions that establishes Defendant McFerrin's conduct to be a constitutional violation. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). Plaintiff cites a Tenth Circuit case where the court found that the "[d]efendant violated clearly established law by choosing to ignore Plaintiff's repeated complaints of severe abdominal pain and requests for medical assistance, thus completely denying him any medical care 'although presented with recognizable symptoms which potentially create[d] an emergency.'" *Al-Turki v. Robinson*, 762 F.3d 1188, 1195 (10th Cir. 2017) (quoting *Self*, 439 F.3d at 1232). The court said that "a deliberate indifference claim will arise when 'a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency[.]'" *Id.* at 1194 (quoting *Self*, 439 F.3d at 1232). "A medical professional may not ignore an inmate's complaints of severe pain and then escape liability because later-discovered facts about the inmate's pain, while serious enough to give rise to an Eighth Amendment claim, do not precisely correspond with the facts of previous Tenth Circuit cases." *Id.* at 1195.

Plaintiff does not argue that Defendant McFerrin was deliberately indifferent to his

neurosyphilis specifically, but rather that he was on notice of a serious medical need. *Response* [#69] at 11. Defendant McFerrin's lack of knowledge regarding Plaintiff's particular condition did not prevent him from perceiving that his actions — his alleged choice to lie about a conversation he had with Plaintiff regarding Plaintiff being "fine" with seeing a doctor about his deteriorating vision after Plaintiff's release date — would constitute a violation of the Eighth Amendment. "[B]ecause the eventual presence or absence of verifying medical evidence cannot bear on an officer's decision to seek or deny treatment, it cannot provide a basis for immunity." *Al-Turki*, 762 F.3d at 1195 (quoting *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007)).

Plaintiff also cites another Tenth Circuit opinion where the court found the defendant to be the gatekeeper to an orthopedic specialist and her deliberate failure to fulfill that role was the cause of delay in the plaintiff receiving surgery. *Sparks v. Rittenhouse*, 164 F. App'x 712 (10th Cir. 2006). The plaintiff there suffered from pain due to bone fragments in his shoulder and was recommended for surgery. *Id.* at 712. A combination of the defendant's alleged false statements regarding the plaintiff refusing treatment and failing to issue medication recommended by the specialist contributed to the court's finding that the defendant was deliberately indifferent. *Id.* at 718-19.

The Tenth Circuit cases presented by Plaintiff may not precisely correspond with the ailments, symptoms, or treatments provided; however, they are comparable and involve materially similar conduct. The prison official who was the recipient of the complaint from Plaintiff was in a gatekeeper position denying Plaintiff access to medical care although presented with symptoms which potentially created a medical emergency. Defendant McFerrin was in possession of a kite from Plaintiff claiming near blindness in his right eye

and deteriorating vision in his left eye. Defendant McFerrin knew that Plaintiff's condition was severe enough for referral to a specialist, yet he is alleged to have lied about the Plaintiff being "fine" with a doctor's appointment twelve days in the future and nine days after his scheduled release. Thus, based on these allegations, Defendant McFerrin prevented Plaintiff from receiving treatment by denying him access to a specialist.

Conversely, Defendant McFerrin references a Fourth Circuit opinion as being most analogous to this case; however, the Court finds that case unpersuasive. *Motion* [#67] (citing *Johnson v. Quinones*, 145 F.3d 164, 169 (4th Cir. 1998)). In *Johnson v. Quinones,* the plaintiff suffered from permanent vision loss due to a tumor. *Id.* at 166. The defendant examined the plaintiff on seventeen occasions, consulted with a dermatologist, and referred the plaintiff to an optometrist who examined him four times. *Id.* at 165. Both the defendant and the optometrist prescribed various treatments over a two-year period in an attempt to treat the plaintiff's ailments. *Id.* at 168. The court found the defendant's actions did not amount to deliberate indifference because the defendant took steps to alleviate his issues, referred the plaintiff to two specialists, and the plaintiff did not produce any evidence that the defendant made the connection between the symptoms and the tumor. *Id.* at 169. In Plaintiff's case, Defendant McFerrin merely observed Plaintiff walking around the pod and did not physically examine Plaintiff. Defendant McFerrin did not seek to treat Plaintiff's deteriorating vision and denied Plaintiff access to a specialist.

The Court is unpersuaded by Defendant McFerrin's arguments that facts unknown to him at the time when he failed to act can now insulate him from liability. Defendant McFerrin was confronted with a situation where a pretrial detainee was complaining of near blindness in his right eye and deteriorating vision in his left eye. Taking the facts in the light

most favorable to Plaintiff, the Court finds that Defendant McFerrin violated a clearly established law by allegedly lying about conversations he had with Plaintiff, making false statements on his assessment of the Plaintiff, and preventing Plaintiff from seeing a specialist sooner. Thus, Plaintiff has sufficiently alleged that Defendant McFerrin denied Plaintiff access to prompt medical care although he presented with symptoms which potentially created a medical emergency.

Accordingly, Defendant McFerrin is not entitled to qualified immunity at this time, and the Motion [#67] is **denied**.

### IV. Conclusion

IT IS HEREBY **ORDERED** that the Motion [#67] is **DENIED**.

Dated: October 11, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge